UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** **EX. REL. WESLEY H. MORRIS,** *Plaintiff* § § § § | |
| v. § | No. 1:19-CV-00726-RP |
| § **SILICON SPACE TECHNOLOGY CORPORATION, NEW SCIENCE VENTURES, LLC, ET AL.,** *Defendants* § § § § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE ROBERT PITMAN
     UNITED STATES DISTRICT JUDGE

Before the Court is relator Wesley H. Morris's motion for attorneys' fees, Dkt. 43, which the District Judge referred to the undersigned for report and recommendation. Having considered the motion and all related filings, the undersigned recommends that the District Judge grant Morris's motion.

### I.   BACKGROUND

Morris is an inventor and a co-founder of Defendant Silicon Space Technology/Vorago[1] ("SST"), which designs and develops radiation-hardened integrated circuit devices for military and space applications. Dkt. 1, at 3, 4. According to Morris, certain components produced via SST's unique manufacturing process—which allowed the components to operate in, for example, extreme radiation

---

[1] According to the complaint, Silicon Space Technology was renamed Vorago in 2015. Dkt. 1, at 3.

1

and high temperatures—were subject to "strict export controls," including some imposed by International Traffic in Arms Regulations ("ITAR"). *Id.* at 9, 10.

After Defendant New Science Ventures, LLC ("NSV") gained majority ownership and control of SST, it "ousted" Morris from his position as CEO, and, Morris alleges, began "engaging in illegal conduct." *Id.* at 4. In particular, Morris contends that SST misrepresented its eligibility as a "small business concern"[2] to receive Small Business Innovation Research ("SBIR")[3] grants from NASA and other federal agencies and made false statements regarding its compliance with certain SBIR terms, including compliance with export restrictions like ITAR. *Id.*

Morris brought this False Claims Act (FCA) action against SST, NSV, and certain SST officers[4] based on SST's alleged misconduct relating to the SBIR grants. *Id.* at 38-39; 31 U.S.C. § 3729(a)(1)(A), (B), (C). The United States intervened in that part of the action alleging that SST misrepresented its eligibility for SBIR grants. Dkt. 36, at 1. It declined to intervene in the "remainder of [the] action." *Id.*

---

[2] To be eligible for an SBIR grant, an awardee must generally "[b]e a concern which is more than 50% directly owned and controlled by one or more individuals (who are citizens or permanent resident aliens of the United States) [or] other small business concerns (each of which is more than 50% directly owned and controlled by individuals who are citizens or permanent resident aliens of the United States)." 13 C.F.R. § 121.702(1)(a).

[3] "The goal of the SBIR program is to provide research assistance to small businesses in order to maintain and strengthen the competitive free enterprise system and the national economy." *U.S. ex. rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 462 (5th Cir. 2009) (citing 15 U.S.C. § 638(a)).

[4] These officers include Vivek Mohindra, an SST board member and NSV partner; Garry Nash, a "high-ranking officer" of SST; and Bernd Lienhard, the CEO of SST. Dkt. 1, at 2.

All parties jointly moved to dismiss the case subject to a settlement agreement. Dkt. 39.[5] Morris subsequently filed a motion for attorneys' fees. He requests that this Court award him "at least" $440,673.86 pursuant to 31 U.S.C. § 3730(d), which provides that a *qui tam* plaintiff "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs" awarded against the defendant. Dkt. 43, at 17. SST and NSV (together, "Defendants") "do not dispute that the FCA entitles [Morris] to reasonable attorneys' fees spent pursuing the claim he actually 'prevailed on[.]'" Dkt. 47, at 6. However, Defendants oppose the motion on the grounds that "almost all" the fees Morris seeks are impermissibly unrelated to his FCA claims and that any FCA-related fees are insufficiently identified or parsed from unrelated billing entries. *Id.* at 10-17.

## II.   LEGAL STANDARD

Relators who prevail on an FCA claim in a *qui tam* action—including those who receive payment from settlement proceeds—are entitled to receive from the defendants "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. §§3730(d)(1); *U.S. ex. rel. McNeil v. Jolly*, 451 F. Supp. 3d 657, 667 (E.D. La. 2020) ("Based on the plain language of § 3730(d)(1), a person who is entitled to attorneys'

---

[5] According to Morris, the United States will recover $1,350,000.00 from SST and NSV pursuant to the agreement.

3

fees … is one who receives a payment from the proceeds of the action or settlement of the claim.").

Courts calculate *qui tam* fee awards according to the lodestar method, which is the number of hours reasonably spent on the litigation multiplied by the attorney's reasonable hourly rate. *U.S. ex rel. Bliss v. Biocompatibles Int'l PLC*, No. SA-13-CV-667-XR, 2019 WL 79488, at *3 (W.D. Tex. Jan. 1, 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). After calculating the lodestar amount, a court may enhance or decrease the amount of fees based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).[6] The party seeking fees has the burden to show the reasonableness of the hours billed and the exercise of reasonable billing judgment. *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). An award of attorneys' fees is entrusted to the "sound discretion" of the district court. *Tex. Commerce Bank Nat'l Ass'n v. Cap. Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990).

---

[6] The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

4

## III. DISCUSSION

### A. Relatedness

SST and NSV argue that Morris may not recover "the vast bulk" of the attorneys' fees he requests because they relate to time his counsel spent pursuing his International Traffic in Arms Regulations ("ITAR") allegations as opposed to his successful SBIR allegations—that is, those allegations on which the government intervened. Dkt. 47, at 8, 10-11. Morris responds that Defendants' attempt to treat Morris's ITAR allegations as distinct claims is unsupported. Dkt. 48, at 2.

First, Defendants cite no binding authority in support of their assertion that because the United States declined to intervene on some of Morris's claims, Morris is not entitled to a fee award for attorney work on those claims. Dkt. 47, at 11 (citing *U.S. ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 161 (1st Cir. 2022)). Indeed, in *United States ex rel. Longhi v. Lithium Power Technologies, Inc.*, the Fifth Circuit affirmed an award of attorneys' fees for false claims with respect to all 21 of the defendant's SBIR contracts where the government intervened in—and the plaintiff won on—only four. 575 F.3d 458, 464, 476 (5th Cir. 2009); *see also U.S. ex rel. Conyers*, 108 F.4th 351, 354 (5th Cir. 2024) (citing 31 U.S.C. § 3730(d)(1)-(3)) (recognizing that even a relator whose claims the government declines to join may recover a portion of the proceeds); 31 U.S.C. § 3730(d)(2) (allowing a relator to recover attorneys' fees where the government declined to intervene in the action[7]). To the extent Morris's claims could be viewed as distinct—and the undersigned disagrees that they are—

---

[7] Of course, the United States intervened in Morris's action, but only in part. Dkt. 36, at 1.

the United States' decision not to intervene in some parts of the action does not categorically bar Morris's recovery.[8]

Neither does alleged lack of relatedness bar Morris's fee award. While it is well-established that fees may not be awarded where "counsel's work on one claim [is] unrelated to his work on another claim," the same is not true where a plaintiff's claims "involve a common core of facts or [are] based on related legal theories." *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983); *cf. Conyers*, 108 F.4th at 359 (endorsing a claim-by-claim analysis). In keeping with *Hensley*, the Fifth Circuit held in *Longhi* that the district court did not abuse its discretion by awarding the plaintiff's fees in full because the "claims regarding the four SBIR contracts arose from the same set of contracts, same actors, and the same illegal intent to defraud the government … in violation of the FCA." 575 F.3d at 476. It further affirmed the district court's determination that the fees related to the four SBIR contracts should not be "segregated" from the other claims and that plaintiff's "level of success on the four SBIR claims alone was sufficient enough to merit" a full award. *Id.*

In his complaint, Morris asserts that SST presented false claims to obtain SBIR funding. Dkt. 1, at 38. In support of this broader allegation, Morris points to SST's alleged false statements regarding its eligibility to receive SBIR funding as a "small business concern" and its compliance with the terms of the SBIR grants, which included compliance with export restrictions (e.g., ITAR) on the funded work. *See id.*

---

[8] While the Court was not privy to the parties' settlement negotiations, the undersigned is skeptical of Defendants' bald assertion that Morris's ITAR-related allegations "played no role" in the settlement of this case. Dkt. 47, at 14.

at 4. Contrary to Defendants' assertions, Morris does not bring independent ITAR claims. *See* Dkts. 1; 47, at 12. Rather, his ITAR-related allegations relate to Defendants' noncompliance with the SBIR grant requirements. *See* Dkt. 1, at 37-38. And while attorney work relating to the ITAR allegations may not completely overlap with the eligibility allegations, the successful claims arose from the same set of grants, the same actors, and the same alleged illegal intent to defraud the government in violation of the FCA. *See Longhi*, 575 F.3d at 476. The ITAR allegations therefore share a common factual and legal core with the successful claims. *See Hensley*, 461 U.S. at 435. Thus, Morris did not fail to prevail on a claim that is unrelated or "distinct in all respects" from his successful claims. *See Saldivar v. Austin Indep. Sch. Dist.*, No. A-14-CA-00117-SS, 2016 WL 1064654, at *3, 4 (W.D. Tex. Mar. 15, 2016) (holding that plaintiff's unsuccessful age-discrimination claim was "wholly distinct" from her Fair Labor Standards Act claim).

The undersigned agrees with Morris that the facts in *United States ex rel. Cook-Reska v. Community Health Systems, Inc.* are distinguishable. 641 F. App'x 396, 398-99 (5th Cir. 2016). There, the Fifth Circuit held that the district court did not clearly err in finding that there was no common core of facts where the plaintiff sought to recover fees stemming from two distinct categories of claims: the first from a nationwide investigation of emergency department admissions and the second from the plaintiff's individual investigation of improper billing and referral practices at a specific hospital. *Id.* at 397, 398-99. In contrast, Morris seeks to recover fees stemming from claims that rest on a single set of SBIR grants. And while Morris

7

supports his claims with evidence relating to multiple types of SBIR violations—relying on both SST's alleged misrepresentations regarding its eligibility and its noncompliance with SBIR grant terms—Morris's claims nonetheless are based on the same actors and alleged illegal intent. *See Longhi*, 575 F.3d at 476.

SST and NSV also argue that Morris is not entitled to attorneys' fees for time spent preparing an "SEC disclosure." Dkt. 47, at 13. Morris responds that the so-called "SEC disclosure" refers to Morris's submission of "all material evidence and information" in Morris's possession to the government pursuant to 31 U.S.C. § 3730(b)(2). Dkt. 43, at 8; Dkt. 43-1, at 3. Morris also points out that while the disclosure was served on the SEC, it was also served on the Department of Justice and the Defense Criminal Investigative Service. Dkt. 43, at 3. Because the disclosure was prepared and submitted to the government in compliance with the statute governing Morris's *qui tam* action, and because it disclosed evidence and information necessary to support Morris's case, the undersigned finds that Morris's counsel's work on the disclosure is sufficiently related to Morris's successful SBIR claims and therefore recoverable. As Morris's counsel's ongoing support of the United States' investigation is also related to Morris's successful claims, the undersigned finds that any fees associated with that support are recoverable. *See* Dkt. 43-1, at 4.

The main thrust of Defendants' remaining argument is that because the FCA does not entitle Morris to fees based on his ITAR claims, Morris was required to parse time spent on those claims from time spent on his "successful" SBIR claims. *See* Dkt. 47, at 15. Defendants assert that because Morris did not do so, this Court should

8

either reduce or reject Morris's fee request. *Id.* at 17. But because Morris's ITAR claims were not independent of his successful SBIR claims and instead shared a common core of fact, this argument is without merit. *See Hensley*, 461 U.S. at 435.

### B.     Reasonableness

Morris has met his burden to show that the requested fee award is reasonable. *See Walker*, 99 F.3d at 769. Morris demonstrates through an affidavit[9] from one of his attorneys that counsel reviewed all time entries associated with the case to determine that only compensable work was claimed. Dkt. 43-1, at 6. Morris's counsel then calculated the reasonable rate for work done by counsel and staff according to the prevailing rates in the Austin legal market. *Id.* at 10-12; *see McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)). In the affidavit, counsel affirmed that the rates were reasonable and reflected prevailing market rates. Dkt. 43-1, at 9. Finally, counsel multiplied each attorney or paralegal's reasonable rate by the hours he or she worked to obtain the lodestar figure. Dkts. 43-1, at 14; 43-2. This rate is presumptively reasonable, and counsel's requested fee award is well-supported by the record. *See* Dkt. 43-1 (affidavit); *McClain*, 649 F.3d at 383 (holding that "'[t]he hourly fee awarded must be supported by the record'" (quoting *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997))); *see Perdue*, 559 U.S. at 554 (holding that there is a strong presumption that the lodestar figure is reasonable).

---

[9] *See League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 n.5, 1235 (5th Cir. 1997) (relying on affidavits from the prevailing party's attorneys in determining the reasonableness of the requested fee award).

The undersigned finds that an application of the *Johnson* factors neither counsels an increase nor a decrease in the lodestar amount. As explained above, a court may enhance or decrease the amount of fees generated in the lodestar calculation based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717-19. Those factors are (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

On factor (1), Defendants argue that Morris's requested fee award is inflated because "the highest-billing partners charged for almost all of the time." Dkt. 47, at 18. The undersigned agrees with Morris that regardless of who performed the work, the rates charged were reasonable for the labor required. Moreover, this factor is subsumed in the lodestar amount. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993) (holding that the district court did not err in its calculation of the lodestar amount when it determined that the first four factors of the *Johnson* test were subsumed in the lodestar amount).

Morris argues that (2) the novelty and difficulty of the issues in this case, as well as (3) the skill required to perform the legal services properly, call for an increased award. Dkt. 43, at 15-16. While the undersigned appreciates that representing FCA whistleblowers presents "unique complexities and risks," the undersigned will not increase the fee award merely because this is such a case. *Id.* at 15. Further, while the skill required to handle this case may be substantial, the undersigned will not deviate from the presumptively reasonable lodestar amount simply because other attorneys—including defense counsel—performing similar work charge more, as Morris advocates. *Id.* at 15-16. Indeed, it is improper to compare the rates of plaintiffs' and defense counsel, since "the tasks and roles of counsel on opposite sides of a case vary fundamentally." *McClain*, 649 F.3d at 384.

Next, although the facts that Morris's counsel (3) took this case on contingency and (4) helped obtain a substantial recovery for the United States certainly do not counsel a *decrease* in the lodestar amount, the riskiness and recovery in this case are not so remarkable that they justify a departure from the lodestar. *See* Dkt. 43, at 16. Finally, while contingency cases may be riskier than those based on a fixed fee, the fact that counsel takes a case on a contingency basis does not, as Morris suggests, counsel an upward adjustment of the lodestar fee on (5) undesirability grounds. *Id.*

As for Defendants' argument that (8) the results obtained merit a decreased fee award, Morris's "degree of success" in this case—measured both by the amount he recovered in comparison with the amount he sought and Morris's share of the United States' recovery—is not so limited as to warrant a deviation from the lodestar

11

amount. *See* Dkt. 47, at 19; *Hensley*, 461 U.S. at 436 (holding that "the most critical factor" in calculating a fee award is the "degree of success obtained"). Notably, the United States points out in its statement of interest that Morris's 17% share of the United States' recovery "is not a 'low share.'" Dkt. 49, at 2. Moreover, the Court in *Longhi* awarded plaintiff his entire fee request based on his success on claims relating to four out of 21 SBIR contracts. *Longhi*, 575 F.3d at 476. Morris is no less successful in this case.

Therefore, Morris should receive $440,673.86 in attorneys' fees, or the lodestar amount for the work performed on this case.

## IV.   RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Morris's opposed motion for attorneys' fees, Dkt. 43, in full. The undersigned recommends that the District Court enter an order awarding Morris $440,673.86 in attorneys' fees.

The referral to the Magistrate Judge should now be canceled.

## V.   WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the

party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** January 13, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE